# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 15-20307-TLM** |
| **SHAWN T. MONTEE and** | ) | |
| **HEATHER M. MONTEE,** | ) | |
| | ) | **Chapter 7** |
| **Debtors.** | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION ON
## MOTION FOR SANCTIONS, DOC. NO. 337

_____

On March 14, 2018, chapter 7 debtors Shawn and Heather Montee ("Debtors") filed a "Motion for § 362(k) Sanctions and Contempt." *See* Doc. No. 337 ("Debtors' Sanctions Motion").[1]  Debtors' Sanctions Motion targets creditor Robert Wolford ("Wolford") for his conduct in *Wolford v. Montee*, Case No. CV-2014-4713, First Judicial District, State of Idaho, Kootenai County (the "State Court Case").

## BACKGROUND AND FACTS

Wolford filed a proof of claim in the bankruptcy case asserting a total claim of $2,455,862.40 based on a judgment and amended judgment entered in the State

_____

[1]  Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101-1532, and Rule references are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

Court Case in 2014. *See* Claim No. 7-1.[2] Wolford also initiated Adv. No. 16-07007-TLM, seeking a judgment under § 727(a) of the Bankruptcy Code denying Debtors any discharge of their debts. However, given the pendency of matters in the State Court Case, an April 2–5, 2018 trial in the adversary proceeding was vacated. *See* Adv. No. 16-07007-TLM at Doc. No. 95.[3]

The litigation between Wolford and Debtors has been lengthy, multifaceted, and highly contentious. It has been, and is now, waged on several fronts.

### A.    Wolford's Stay Relief Motion and the Injunction Order

In June 2017, Wolford sought relief from the § 362(a) automatic stay in order to return to the State Court Case and prosecute contempt proceedings against Debtors based on their alleged violations of an injunction imposed by the State Court on March 25, 2015. *See* Doc. No. 311 ("Wolford's Stay Relief Motion") at 3; *see also* Doc. No. 311-1 ("Injunction Order"). The entry of the Injunction Order

---

[2]   The proof of claim has not been objected to and therefore constitutes prima facie evidence of the validity and amount of the claim. Rule 3001(f). However, the Court notes that on November 23, 2016, the Idaho Supreme Court affirmed summary judgment on one note; vacated summary judgment on a second note and remanded for consideration of when payments were due, when interest began accruing, and whether the interest rate was per month or per annum; and affirmed the district court's entry of a temporary restraining order and the injunction discussed further below. *Wolford v. Montee*, 387 P.3d 100 (Idaho 2016). No amendments have been made to the asserted proof of claim in light of the remand. However, on March 28, 2018, the chapter 7 trustee filed a Report of No Distribution, indicating there are no assets available for distribution on creditors' claims.

[3]   Wolford has another adversary proceeding against Debtors, Adv. No. 15-07020-TLM, seeking a judgment that the debts owed to Wolford are nondischargeable under § 523(a) regardless of any general discharge that might be granted. A trial scheduled in that adversary proceeding was vacated in 2016 given the pending conversion of the bankruptcy case to chapter 7, and it has not been rescheduled due to Wolford's filing and prosecution of the § 727(a) action.

MEMORANDUM OF DECISION - 2

preceded the initial filing of Debtors' chapter 11 petition on April 21, 2015.

Under the Injunction Order, Debtors and any other persons including attorneys "acting under, in concert with, or for [Debtors], are enjoined and restrained from creating or forming any further business entities, which would include, but not be limited to, limited liability companies, corporations, or limited partnerships without first obtaining approval by this [State] Court."  Doc. No. 311-1 at 3.  The Injunction Order also restrained and enjoined Debtors, absent prior State Court approval, from "removing, concealing, hiding, encumbering, commingling, selling, conveying, disposing of, or transferring" any assets of certain identified LLCs[4] "or any other asset of an entity" in which Debtors had an interest or any entity of Debtors had an interest, and similarly enjoined any such removal, concealment, etc., of any asset in which Debtors had an interest.  *Id.*

Wolford's Stay Relief Motion asserted that, since the entry of the Injunction Order and after their bankruptcy filing, Debtors:

> [F]ormed at least one limited liability company—a Wyoming company formed May 17, 2016 known [as] North Pacific, LLC and which registered as a foreign limited liability [company] in Idaho on June 6, 2017—and have conducted business via this limited liability company without obtaining court approval from the Kootenai County District Court as required by the Injunction Order.

---

[4]  The referenced LLCs were BKSMM Investments, LLC, an Idaho limited liability company, and BKSMM Investments, LLC, a Florida limited liability company.  The Florida entity filed a chapter 11 case in this Court on June 29, 2015.  *In re BKSMM Invs., LLC*, Case No. 15-20505-TLM.

MEMORANDUM OF DECISION - 3

Doc. No. 311 at 3.  Wolford sought stay relief alleging:

> "[Debtors] outright disobedience of the Injunction Order, along with
> any other violations of the Injunction Order or future violations of the
> Injunction Order, need to be addressed with the Kootenai County
> District Court.  . . .  The modification of the stay requested by this
> motion shall be limited to simply allowing Wolford to prosecute any
> current contempt proceedings or any future contempt proceedings
> against Debtor in the Kootenai County District Court.    The
> modification of the stay would include allowing Wolford to conduct
> written discovery and depositions of witnesses who would have
> knowledge of Debtor's violation(s) of the Injunction Order in the
> Kootenai County District Court regarding these contempt proceedings."

*Id.* at 4.

Debtors, at the time appearing *pro se*, responded by noting, among other

things, that they had consulted attorneys who allegedly suggested that, due to

conversion of their chapter 11 case to chapter 7, Debtors could form new entities

notwithstanding the Injunction Order.  Doc. No. 314.  On August 11, 2017, shortly

before the Stay Relief Motion came on for hearing, attorney Gregory Rauch

appeared for Debtors.[5]

Wolford's Stay Relief Motion specifically stated: "The relief requested

herein will have no detrimental impact on the estate or the creditor's interest in the

estate.  *The contempt at issue relates solely to the Debtor's post-bankruptcy*

*petition misconduct* and the appropriate forum to address punishment is the

---

[5]  Rauch was not one of the three attorneys who allegedly provided such advice to
Debtors.

MEMORANDUM OF DECISION - 4

Kootenai County District Court whose Injunction Order was violated by the

Debtor." Doc. No. 311 at 6 (emphasis added).

### B.   Hearing and ruling on Wolford's Stay Relief Motion

Wolford asserted the limited nature of the relief sought not only in the Stay

Relief Motion itself, but also during the August 29, 2017 hearing on the Motion.

Counsel for Wolford specifically represented to the Court that "the [State Court]

contempt proceedings will relate *solely* to post-petition conduct for violation of

this Injunction Order." *See* Doc. No. 320.[6]

The Court, in entering its oral decision granting stay relief, noted that the

record established:

(1)  there was a valid prebankruptcy Injunction Order;

(2)  there was a prima facie violation of the Injunction Order (*e.g.*, the

creation and registration of North Pacific, LLC as alleged in the Wolford Stay

Relief Motion);

(3)  orders like the Injunction Order remain effective after bankruptcy and

are not negated by the mere act of filing a petition and, here, the issue concerned

alleged post-bankruptcy conduct violating such an order;

---

[6]  Doc. No. 320 is a PDF with an attached audio file. The Court places the audio recording of many of its hearings on the docket through a utility called CourtSpeak. There is no transcript prepared unless a party or the Court orders one and, despite an apparent request of Debtors for a transcript, *see* Doc. No. 331, none was presented to the Court. However, the Court has listened to the audio in refreshing its memory.

MEMORANDUM OF DECISION - 5

(4)  there was good reason why the violation—and Debtors' defenses including reliance on counsel—should be addressed to the court that issued the Injunction Order;

(5)  the question of remedies for violation, including contempt, should also be addressed by that court;

(6)  while there was a credible argument that this litigation could be viewed as a "continuation" of a prebankruptcy action and thus stayed, the State Court was best situated to consider the issue of whether its order had been violated and the consequences thereof, and therefore stay relief would be granted; and

(7)  that Wolford, in receiving relief from stay, could not seek to enforce the underlying prebankruptcy money judgment but, instead and as specifically requested, could assert a claim or claims of Injunction Order violation arising post-bankruptcy.

The Court, in granting the motion, advised Wolford's counsel that the relief granted "was cabined by what was requested and presented" and that there was no authorization to pursue "prebankruptcy claims." *Id.* The Order thereafter entered by the Court, Doc. No. 325, stated:

> The stay of § 362(a)(1) is terminated to allow Wolford to file with the State Court motion(s) for contempt based on the Montees' failure to comply with the Injunction Order, to conduct discovery on such issue(s), and to litigate the same to final decision. Such contempt proceedings may address the entity creation issue referenced above [*i.e.*, North Pacific, LLC], or any other alleged violation of the

MEMORANDUM OF DECISION - 6

Injunction Order.  The Montees may defend such motion(s) as provided under State law and procedure.  No other or further relief from stay is granted to Wolford.  Nothing in this Order is intended or designed in any way to inhibit or limit the State Court in addressing issues of compliance with and/or consequences for violation of the Injunction Order.

Doc. No. 325 at 2–3 (the "Stay Relief Order").

### C.    Debtors' Sanctions Motion

Debtors' Sanctions Motion, Doc. No 337, seeks damages under § 362(k) for stay violation, and also under § 105(a) relief in the nature of contempt, arguing that the Stay Relief Order was violated due to the manner in which Wolford renewed the litigation in the State Court Case.  They contend:

(a)  Wolford issued a deposition subpoena duces tecum to Debtors' accountant seeking documents, which is overly broad and objectionable.[7]

(b)  Wolford filed in the State Court Case a "Motion/Charges for Nonsummary Contempt" against Debtors and their attorney Paul Daugharty.  *See* Doc. No. 337-3 ("State Court Contempt Motion").  "Charge 1" related to the formation of North Pacific, LLC referred to previously.  Charge 2 related to the

---

[7]  The term "documents" is both broadly and specifically defined in the subpoena, and includes, inter alia, entity formation and operating agreements, financial statements, other financial records, tax returns, email correspondence with Debtors, and any other documents which pertain or relate to any of the same.  The subpoena demands production of such documents as to any one of thirteen listed "Montees' Business Entities" and, for each such request, Wolford sought documents from "January 1, 2013 to present."  Doc. No. 337-2.

MEMORANDUM OF DECISION - 7

formation of Triangle Investments, LLC.[8]   Charges 3 through 40 all relate to

transfers allegedly made by Debtors to themselves or to third parties of BKSMM's

assets or funds, in varying amounts, from March 25, 2015, through June 29, 2015.

Charge 41 asserts Debtors caused BKSMM's interest in receivables from ABCO

Recycling, LLC to be transferred to themselves personally.

Debtors filed a motion in the State Court Case seeking to quash the

subpoena duces tecum on their accountant and to "enforce" the "limited" or

"partial" relief from the § 362(a) stay under the Stay Relief Order.  It was heard on

January 29, 2018.  *See* Doc. No. 337-4 (transcript).  Debtors essentially argued

Wolford's discovery was improper and his State Court Contempt Motion violated

the limits imposed by this Court's Stay Relief Order.

In its ruling, the State Court stated:

> Well, I think this is very straight forward.

> I am going to deny the motion to quash the subpoena and deny
> the motion to enforce the partial stay.

> I think Judge Myers' order is clear.  I think it is broad.  I think
> it—and I think what's being sought in the subpoena is—is the
> discovery of anything that might be relevant, and it's not limited to
> necessarily the three things that are listed for in contempt.

---

[8]  This "charge" does not specify the timing of the entity's formation or provide other
details.  The Court takes judicial notice under Fed. R. Evid. 201 of the website of Idaho Secretary
of State, which reflects that Triangle Investments, LLC was formed on July 30, 2015 (*i.e.*, after
the Injunction Order and after the bankruptcy filing) by Daugharty and Michael Montee.  *See*
https://www.accessidaho.org/public/sos/corp/W154391.html (last visited May 7, 2018).

MEMORANDUM OF DECISION - 8

. . .

> And clearly, any violation of the stay is an issue for Judge Myers to take care of, not this Court. So, those arguments are entirely misplaced.

Doc. No. 337-4 at 9.[9]

Consequently, Debtors' Sanctions Motion was filed asking this Court to enforce the Stay Relief Order either under § 362(k) or alternatively under its contempt powers and § 105(a).

## DISCUSSION AND DISPOSITION

### A.    The continued post-petition effect of the Injunction Order

The state court's ability to enforce the Injunction Order is not affected by Debtors filing their bankruptcy petition. The Injunction Order remained in effect and enforceable after Debtors' bankruptcy commenced.

The Ninth Circuit in *Dingley v. Yellow Logistics, LLC (In re Dingley)*, 852 F.3d 1143 (9th Cir. 2017), addressed a situation where Dingley was sued prior to bankruptcy. The state court imposed discovery sanctions against Dingley and, when they were not timely paid, issued an order requiring Dingley to show cause why he should not be held in contempt for his failure to pay the court-ordered sanctions. Dingley filed for chapter 7 relief and, on the date of the state court show cause hearing, his attorney advised the court of the bankruptcy filing. The

---

[9] The "three things" appears to be a reference to North Pacific, LLC; Triangle Investments, LLC; and the multiple BKSMM transfers including cash and the ABCO receivables. *See id.* at 3–4 (colloquy).

MEMORANDUM OF DECISION - 9

state court vacated the hearing but required the parties to address the effect of the automatic stay on the pending civil contempt proceedings. The adverse party filed the requested brief. Dingley responded with a motion in the bankruptcy court seeking § 362(k) sanctions against that party. The bankruptcy court determined the stay was violated and awarded $1,500 in sanctions, but the Bankruptcy Appellate Panel reversed. *In re Dingley*, 514 B.R. 591 (9th Cir. BAP 2014). The Ninth Circuit affirmed on a different ground. It concluded "that civil contempt proceedings such as Dingley's are not covered by the automatic stay because they qualify under the Bankruptcy Code's statutorily-enumerated exception for regulatory actions taken by a government entity. *See* 11 U.S.C. § 362(b)(4)." 852 F.3d at 1146. It cited to and relied on *Berg v. Good Samaritan Hosp. (In re Berg)*, 230 F.3d 1165 (9th Cir. 2000).

*Berg* concluded that a proceeding to impose sanctions under Fed. App. R. 38 against a party for prosecuting a frivolous appeal was excepted from the automatic stay pursuant to § 362(b)(4). *Berg* reached that conclusion stating "[w]e do so because it is clear that the purpose of such sanctions is to effectuate public policy, not to protect private rights or the government's interest in the sanctioned person's property." 230 F.3d at 1168. The Ninth Circuit rejected the argument that, because the sanctions would inure to the benefit of a private party, § 362(b)(4) was inapplicable. *Berg* reasoned that although private parties may

MEMORANDUM OF DECISION - 10

benefit financially from ordered sanctions, "the deterrent effect of monetary penalties can be essential for the government to protect its regulatory interests." *Id*.  As summarized in *Dingley*, the § 362(b)(4) exemption applied to the creditor's attempt to collect sanctions "regardless of whether the sanctions are initially pursued by a private party or whether the sanctions award is ultimately payable to a private party."  852 F.3d at 1147 (quoting *Berg*, 230 F.3d at 1168).

A similar result was reached in *Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012), where an injunction order had been entered preventing a party from opening a restaurant without seeking prior court approval. The enjoined party proceeded to violate the injunction order multiple times—both pre- and post-petition—and argued it was protected from the enjoining court's proceedings because it filed a bankruptcy petition.  On appeal, the debtor framed the issue as whether "the automatic bankruptcy stay should preclude further proceedings in contempt that are civil in nature."  *Id.* at 760.  The Sixth Circuit held:

> It is within a court's inherent power to take whatever steps are necessary to ensure those persons within its power comply with its orders. We cannot conceive that Congress intended to strip a court of this power, and instead permit a party to blatantly violate direct orders of the court and then seek shelter from a bankruptcy judge.  If this were so, the court's orders could be rendered almost meaningless.

*Id.* at 761 (quoting *In re Rook*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989)).

This issue was also considered at length in the context of a § 523(a) action

MEMORANDUM OF DECISION - 11

in *RDLG, LLC v. Leonard (In re Leonard)*, 2014 WL 1025823 (Bankr. E.D. Tenn. Mar. 14, 2014). There, a U.S. District Court in North Carolina had entered a default judgment against the debtor as a sanction under Fed. R. Civ. P. 16(f) and the inherent power of the court. *Id.* at *2–3. An issue was raised in the § 523(a) adversary proceeding as to the collateral estoppel effect of that District Court judgment since it was entered after the debtor's bankruptcy petition was filed.

The court in *Leonard* observed that "Although there is no specific statutory exception to the automatic stay for contempt actions, the Sixth Circuit Court of Appeals has held that the automatic stay in a debtor's bankruptcy case did not preclude entry of an order finding him in contempt in a pending action." *Id.* at *6 (citing *Dominic's Restaurant*). In a thorough analysis of case law, *Leonard* concluded that the district court's assessment of sanctions against the debtor was excepted from the automatic stay either as a non-statutory exception as recognized in *Dominic's Restaurant* or under § 362(b)(4), and that it was "abundantly clear that the purpose of the imposed sanctions was to protect the integrity of the court and the judicial process by punishing Leonard rather than to adjudicate the parties' [underlying] dispute." *Id.* at *7–9.

Here, Debtors allegedly violated the pre-petition Injunction Order. The state court's ability to assess whether its order was violated and, if it finds a violation, to enter an appropriate judgment, is not prevented by Debtors'

MEMORANDUM OF DECISION - 12

bankruptcy.

### B. The nature of this Court's Stay Relief Order

Though the Court attempted to be clear at the August 29 hearing and in the Stay Relief Order, it here emphasizes that the Stay Relief Order allowed Wolford to pursue remedies for contempt of the Injunction Order based on conduct that occurred *after the filing of the bankruptcy petition on April 21, 2015*. Recall, Wolford specifically represented to this Court in his Stay Relief Motion *and* at the August 29 hearing that no contempt remedy was sought for any conduct other than *post-petition* conduct. The Stay Relief Order was cabined by and limited to the request made.[10]

The case law, especially *Dingley* and *Berg*, makes clear that the State Court is free to address any violation of its Injunction Order, and to enforce its Injunction Order. However, Wolford never discussed any of these authorities. More importantly, Wolford specifically asked for relief from stay in order to present the State Court with only alleged *post-petition* violations. That raises a separate issue which must be addressed.

---

[10]  The Stay Relief Order's language ("Such contempt proceedings may address the entity creation issue referenced above, or any other alleged violation of the Injunction Order") was not particularly well stated. In light of the Court's oral ruling and the concessions and limitations made by Wolford's counsel, it should have stated "or any other alleged *post-petition* violation of the Injunction Order."

MEMORANDUM OF DECISION - 13

**C.     Whether and to what degree Wolford's State Court Contempt Motion exceeded the representations made to, and approved by, this Court**

In carefully reading the State Court Contempt Motion, the Court finds that Wolford addresses two clearly post-petition, allegedly contumacious actions: the formation (etc.) of North Pacific, LLC and of Triangle Investments, LLC. They, and the alleged post-petition violations in Charges 16, *et seq.*, were clearly contemplated and allowed under the Stay Relief Order.

However, in regard to the multiple claims involving Debtors' alleged transfers of BKSMM assets or interests, the situation is less clear. Wolford seeks contempt for transfers (or other conduct prohibited by the Injunction Order) made in connection with BKSMM. As noted above, some of these occurred between March 25, 2015 (the date of the Injunction Order) and April 21, 2015 (the petition date). Debtors contend, and the Court agrees, that in this regard Wolford went beyond the representations he made to this Court and beyond the bounds contemplated in the Stay Relief Order because those are *prepetition* acts.

Charges 3 through 10 of the State Court Contempt Motion refer to dates prior to the petition date. Wolford's pursuit of the same violated the limited relief he requested and this Court allowed.

Charges 11 through 13 are more difficult to parse. They all refer to alleged conduct *on* April 21, 2015. Wolford's inclusion of these is consistent with the

MEMORANDUM OF DECISION - 14

Stay Relief Order only if the transactions at issue occurred *after* 4:11 p.m. on April

21, which was the time the chapter 11 petition for relief was filed.  *See* Doc. No. 1

(at notice of electronic filing).  The record now before this Court does not allow

for clear resolution of that question.

>    **D.    The discovery aspect**

Debtors also object to the discovery request, in part given its breadth, in

part because it was directed to their accountant (which Debtors believe implicates

privilege), and in part given the temporal breadth of the requested production of

documents from January 1, 2013, forward.  The State Court can address all of

Debtors' concerns (including the accountant subpoena issues) while managing the

discovery process and the preparation for and holding hearings on Wolford's State

Court Contempt Motion.  This Court has no reason, or desire, to kibbitz.  The

control of discovery in the State Court Case is something within the jurisdiction

and purview of the State Court.[11]  That Court can also consider arguments about

whether the discovery is too broad, burdensome, or any other issues related to

preparation of the State Court Contempt Motion for hearing.

---

[11]  As noted, the State Court denied the motion to quash on January 29.  Counsel for the accountant filed a motion for protective order in this Court on March 27, but never properly noticed it for hearing.  In a supporting affidavit, that counsel noted that another motion to quash was filed in State Court on March 7.

MEMORANDUM OF DECISION - 15

### E.    Consequences of Wolford's failure to abide by his representations to this Court

As explained above, Wolford's State Court Contempt Motion generally did not violate the automatic stay.  However, because Wolford expressly limited his pursuit of the contempt proceedings to post-petition actions, the contempt "charges" for conduct occurring from March 25, 2015, through (and potentially including some or all of) April 21, were improper.  Even if the case law allows for enforcement of the Injunction Order as exempted from the stay, Wolford chose to make a specific request for express stay relief.  That request was granted, but relief was limited consistent with Wolford's request for state court review of alleged post-petition violations.  The problem here is not so much that the stay was violated (under *Dingley*, *et al.*, it was not), but with Wolford's actions in pursuing litigation he expressly represented would be left alone.

Thus, while Debtors' arguments that § 362(k) applies are not well taken, this Court can and will regulate the conduct of litigants appearing before it through its inherent power and § 105(a).

The Court concludes that sanctions, in the form of an award of attorneys' fees and costs to Debtors payable by Wolford, are appropriate.  Debtors' Sanctions Motion brought to light the fact that a portion of Wolford's State Court Contempt Motion related to pre-petition claims, which was inconsistent with Wolford's express representations to this Court.  Debtors shall file, within 14 days of the

MEMORANDUM OF DECISION - 16

Order entered on this Decision, an itemization of reasonable fees and costs related to Wolford's pursuit of State Court relief beyond that which was expressly requested and granted by this Court. Wolford shall have 14 days from the service thereof within which to file any objections. The Court will consider the submissions and, in its judgment and discretion, determine an appropriate award. That will be done without hearing or oral argument unless the Court in its discretion determines otherwise.

**CONCLUSION**

The long-standing enmity between the parties has led to a surfeit of litigation in multiple courts. The decision to fight these battles on several fronts has consequences. One wonders how pyrrhic ultimate victories for either party might be. The results of this one skirmish are mixed. Debtors' Sanctions Motion is granted only in part, as indicated, and an appropriate Order will be entered.

DATED: May 10, 2018



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 17

## CERTIFICATE OF SERVICE

A "notice of entry" of this Decision has been served on Registered
Participants as reflected by the Notice of Electronic Filing.  A courtesy copy of the
Decision has also been provided by first class mail addressed to:

Honorable John T. Mitchell
PO Box 9000
Coeur d'Alene, ID 83816-9000

Case No.  15-20307-TLM

Dated:  May 10, 2018


_____/s/_____
Suzanne Hickok
Law Clerk to Chief Judge Myers

MEMORANDUM OF DECISION - 18